*E-FILED ON 1/20/06*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CYNTHIA MENDEZ, | No. C04-01312 JW (HRL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS** |
| v. | |
| UNUM PROVIDENT CORPORATION and PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, | [Re: Docket No. 174] |
| Defendant. | |

On January 17, 2006, this court heard defendants' "Motion for an Exclusion, or Other Appropriate Sanction Regarding Stephen Prater's 'Expert' Opinions Due to Violations of FRCP Rule 26 and the Court's July 8, 2005 Order." Plaintiff Cynthia Mendez opposed the motion. Upon consideration of the papers filed by the parties, as well as the arguments of counsel, the court issues the following order.

**I. BACKGROUND**

In this action, plaintiff alleges bad faith breach of an insurance contract. She has retained Stephen Prater as an expert to testify at trial on claims handling procedures. On July 8, 2005, this court issued an "Order Granting in Part and Denying in Part Defendants' Motion to Compel Stephen Prater's Production of Documents" ("July 8, 2005 Order"). Defendants argued that Prater's report did not sufficiently identify the documents which he considered or relied

1    upon in forming his opinions in this lawsuit. They further argued that Prater was a "hired hand"
2    for alleged insureds and for plaintiff's counsel, and sought discovery to explore possible
3    financial bias on his part. The July 8, 2005 Order directed Prater to, among other things,
4    conduct a reasonable review of his available records and serve a declaration providing a
5    breakdown, by reasoned estimate, of the percentage of his time spent and gross income
6    generated from providing consulting or expert witness services to alleged insureds, to insurance
7    companies, and to plaintiff's counsel, the Friedman, Rubin & White ("FRW") law firm. (July 8,
8    2005 Order, ¶ 9). Additionally, that order directed Prater to produce "all identifiable documents
9    that he considered or relied upon in forming his opinions in this matter, any documents which
10   he intends to rely upon or use at trial, and any notes re the multistate examination report which
11   he generated in the course of preparing his report." (*Id*., ¶ 13).

12   Defendants subsequently filed a motion for sanctions, alleging that Prater failed to
13   comply with the July 8, 2005 Order with respect to his court-ordered financial disclosures and
14   production of documents. This court agreed that Prater's financial disclosures were deficient
15   and, in fact, the methodology was nonsensical. In the order issued on September 28, 2005
16   ("September 28, 2005 Order"), Prater's August 26, 2005 declaration was stricken, and Prater
17   was directed to supplement his financial disclosures. (September 28, 2005 Order, ¶¶ 1, 3). As
18   for the alleged failure to produce documents, defendants argued that Prater refused to identify
19   all of the documents that he intends to rely upon or use at trial because it would be plaintiff's
20   counsel's decision as to what documents he would testify about at trial in support of his
21   opinions. Plaintiff asserted that Prater had fully disclosed the basis for his opinions in this
22   lawsuit, and her counsel represented that "Prater only meant to indicate that at trial, plaintiff's
23   counsel might not ask him about all of the documents he has identified." (*Id*. at ¶ 8). This
24   representation satisfied the court, and it declined to order sanctions. (*Id*.)

25   Defendants deposed Prater on September 28, 2005, and as ordered by the District Court,
26   Prater appeared for another day of deposition on November 22, 2005. Defendants now assert
27   that Prater's November 22, 2005 deposition testimony reveals that his financial disclosures are
28   still misleading and incomplete. They further contend that Prater either could not or would not

2

explain how documents he identified relate to his opinions as to defendants' alleged practices or which documents he might testify about at trial. Pursuant to Fed.R.Civ.P. 26 and 37, they move for an order precluding plaintiff from offering any opinions from Prater at trial or for any other appropriate sanction.

## II.  LEGAL STANDARD

Fed.R.Civ.P. 37(c)(1) provides, in relevant part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." "In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions," including (1) the payment of reasonable expenses and attorney's fees; (2) any of the sanctions authorized by Fed.R.Civ.P. 37(b)(2)(A), (B), and (C); and (3) informing the jury of the failure to make the disclosure. FED.R.CIV.P. 37(c)(1). This rule "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion [to compel disclosure] under [Fed.R.Civ.P. 37] (a)(2)(A)." *See* Advisory Committee Notes to Fed.R.Civ.P. 37 (1993 Amendments); *see also Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (acknowledging that the sanction under Fed.R.Civ.P. 37(c)(1) is "self-executing" and "automatic"). The burden is on the party facing sanctions to prove harmlessness. *Yeti By Molly, Ltd.*, 259 F.3d at 1107.

Where a party fails to obey an order to provide or permit discovery, Fed.R.Civ.P. 37 authorizes sanctions in the form of orders (1) deeming certain matters established for the purpose of the action in accordance with the claim of the party obtaining the order; (2) refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; (3) striking out pleadings, in whole or in part, or staying the proceedings until the order is obeyed, or dismissing the action, or rendering a judgment by default against the disobedient party; and (4) treating the failure to obey as contempt of court. FED.R.CIV.P. 37(b). In addition, or in lieu of such orders, "the court shall require the party failing to obey the order or the attorney advising that party or both to pay

3

1 the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds
2 that the failure was substantially justified or that other circumstances make an award of
3 expenses unjust." *Id*.

### III. DISCUSSION

**A.  Prater's Financial Disclosures**

There is no dispute that (1) in breaking down his time and income between work for insureds and work for insurance companies, Prater did it by "client"; and (2) his characterization of who was his "client" was based upon who paid his invoices, and not who actually retained him. For example, if Prater was retained by an alleged insured, but the defendant insurance company paid his invoice for appearing at a deposition, then Prater disclosed his deposition time and income as being attributable to services provided for an insurance company, notwithstanding that he was retained by and appeared on behalf of the alleged insured.

Prater's disclosure is misleading in that he attributed time and income to insurance companies when he was actually retained by alleged insureds (and vice versa).[1] At the hearing, plaintiff's counsel agreed that Prater's disclosure did not comply with the July 8, 2005 Order, but argued that this is how Prater historically has kept his records. That may well be the case, but it is irrelevant. Nowhere in his declaration did Prater explain what he had done. (*See* Burnite Decl., Ex. B). The stated purpose of the discovery ordered in the July 8, 2005 Order was to permit defendants some leeway in exploring possible financial bias on Prater's part. That order directed Prater to provide information about his time spent and income generated from his provision of services for alleged insureds, insurance companies and the FRW firm, without regard to which party may have actually paid his invoices. Further, Prater indicated in his deposition that he could provide his time and income estimates as directed in the July 8,

---

[1] Although plaintiff argues that Prater's disclosures for both alleged insureds and insurance companies may be skewed, it appears likely that his disclosures decrease his time/income from work for alleged insureds and inflate his time/income from work for insurance companies. The deposition testimony presented suggests that there were far fewer instances where Prater worked for an insurance company but was actually paid for his deposition time by the alleged insured. (*See* Burnite Decl., Ex. F (Prater Nov. 22, 2005 Depo., 519:13-520:3)).

4

2005 Order, albeit he claims that it would take time and his estimates might not be entirely accurate. (*See* Friedman Decl., Ex. 2 (Prater Nov. 22, 2005 Depo., 520:4-12)).

Prater has not complied with the July 8, 2005 Order, and the failure to obey was not substantially justified and was not due to mistake or inadvertence. At the hearing, plaintiff's counsel asserted that it was not apparent, until Prater's deposition, that Prater had misrepresented the source of some of his income. While it may or may not have been apparent to plaintiff's counsel, it certainly should have been clear to Prater himself. Prater will be ordered to (1) conduct a reasonable review of his available records; and (2) serve a supplemental declaration providing a breakdown of his time and income as directed in the July 8, 2005 Order.

While this court finds that exclusion sanctions are inappropriate, it concludes that monetary sanctions are warranted. As discussed above, this is not the first time that Prater has sought to evade or obfuscate the financial information he was ordered to provide, and the instant motion marks defendants' second effort to compel Prater's compliance with his court-ordered financial disclosures. Accordingly, the court will invite defendants to file detailed declarations (1) itemizing with particularity the otherwise unnecessary expenses (including attorney fees) incurred in connection with the instant motion which were directly caused by Prater's mischaracterization of the source of some of his income in his court-ordered financial disclosures; and (2) setting forth an appropriate justification for any attorney-fee hourly rate claimed.

Defendants also complain that Prater has omitted significant income from "consulting" services he has provided. Here, Prater apparently has refused to disclose income which was generated from services he provided as an "advocate" in "litigation-related matters working with lawyers on cases." Plaintiff argues that if Prater was providing legal services as an attorney, then income generated from those services is not "consulting" income under the July 8, 2005 Order. The court disagrees. As noted above, the purpose of the discovery permitted in that order was to allow defendants some means by which to probe possible bias on Prater's part based upon a comparison of income he earned from services provided to alleged insureds (and

5

the FRW firm) with income earned from services to insurance companies. This court finds that time spent and income attributable to the work referenced here should also be disclosed. Prater will be ordered to provide defendants with a supplemental declaration disclosing the time spent and income generated from such work in accordance with the July 8, 2005 Order.

**B.   Prater's Document Disclosure**

At issue here is Paragraph 13 of the July 8, 2005 Order which states:

> 13. In Request Nos. 69-71, 73, 76, 77 and 80, defendants seek the production of all notes and correspondence pertaining to the cited multistate examination report, as well as all documents which Prater believes support his opinions as to defendants' alleged practices. Prater contends that these requests are overbroad and seek information which is part of his "composite knowledge" in any event.
>
> As noted above, it is not clear what Prater means by his "composite knowledge." Nevertheless, defendants are entitled to the documents upon which Prater's opinions are based, as well as any notes he generated in the course of preparing his report. Accordingly, the motion as to these requests is GRANTED as follows: **No later than July 18, 2005**, <u>Prater shall produce all identifiable documents that he considered or relied upon in forming his opinions in this matter, any documents which he intends to rely upon or use at trial, and any notes re the multistate examination report which he generated in the course of preparing his report.</u> As to any documents which Prater contends are subject to protective orders entered in other litigation, the parties shall proceed as directed in Paragraph 6 of this order. The motion as to this request is otherwise DENIED.

(July 8, 2005 Order, ¶ 13) (emphasis added).

In his July 18, 2005 supplemental declaration, Prater says that he does not have any "'notes' regarding the multi-state examination report," and further states that all other documents which he considered or relied on or intend to use at trial were produced either in (1) the four volumes of documents that were produced with his original report or (2) plaintiff's supplemental initial disclosures. (Burnite Decl., Ex. C). He then goes on to provide his "best estimate" of documents which he says he "may" be asked to testify about at trial as follows:

> Ultimately, the decision as to documents that I will be asked to testify about or use at trial is the decision of trial counsel. I therefore can only provide a best estimate of the documents that may be discussed with me. That best estimate includes:
>
> • The claim file in this matter;
>
> • The contract of insurance;

6

- The documents disclosed in my original report at Exhibit A and in my Supplemental Report at pages 1 and 2; and

- Internal corporate documents including the following as identified in plaintiff's supplemental initial disclosures (listed by UP#): [a list of documents, apparently identified by production number, is provided].

(*Id.*) Defendants say that (1) plaintiff's supplemental disclosures comprised 3 CDs of approximately 27,000 pages of documents; and (2) the "Internal corporate documents" identified in Prater's July 18, 2005 declaration were a subset of the 27,000 pages of documents produced in plaintiff's supplemental initial disclosures.

At his September 28, 2005 deposition, Prater brought two Bekins boxes of documents ("Boxed Documents"). The precise contents of these boxes is unclear, except that Prater described the Boxed Documents as containing "documents that were I believe disclosed in a supplemental disclosure of documents that I may be asked about at trial that I've printed out or had printed out at my request."[2] (*See* Burnite Decl., Ex. E (Prater Sept. 28, 2005 Depo., 33:22-34:2)).

Defendants argue that sanctions are warranted because at his deposition, Prater was unable to testify about how the "Boxed Documents" related to plaintiff's claim. Defendants asked generally what the "Boxed Documents" had to do with plaintiff's claim, and also asked about "monthly operating reports" and "Toronto monthly trends" documents which apparently were included in the "Boxed Documents." Prater stated that he did not know what the documents had to do with plaintiff's claim, was not prepared to connect the documents to the testimony he anticipated giving in this lawsuit, and did not know how the documents would be used at trial. (*See* Friedman Decl., Ex.2 (Prater Nov. 22, 2005 Depo. at pp. 639-649)). Indeed, Prater appeared not to know precisely what documents were included in the "Boxed

---

[2] Defendants suggest that the "Internal corporate documents" Prater listed in his July 18, 2005 comprised the entire contents of the two Bekins boxes he brought to his deposition. (*See* Motion at 5:16-19). However, the list of "Internal corporate documents" Prater provided in his July 18, 2005 declaration appear to be less than 170 pages. (*See* Burnite Decl., Ex. C). Further, Prater seemed to suggest that the "institutional documents" he expects to use or testify about at trial are in the four binders submitted with his original report. (Friedman Decl., Ex. 2 (Prater Nov. 22, 2005 Depo., 644:7-8)).

7

1  Documents," except that upon scanning the boxes in his deposition, he noted that some of them
2  may have been duplicates of documents in the four binders attached to his original report. (*See*
3  Friedman Decl., Ex. 2 (Prater Nov. 22, 2005 Depo., 649:4-6)).

4  Plaintiff maintains that Prater has "fully disclosed the documents supporting his
5  opinions in this case," adding that "[h]is expert report was disclosed pursuant to Rule 26 and
6  included four binders of documents that Mr. Prater intends to rely on at trial." (Opp. at p. 5).
7  She says that during the two days of Prater's deposition, defendants asked no questions about
8  documents contained in those four binders. She further asserts that Prater construed Paragraph
9  13 of the July 18, 2005 Order more broadly than did defendants because the order directed him
10 to identify documents within his "composite knowledge."

11 Nevertheless, it appears that Prater or plaintiff may be attempting to leave open the
12 possibility that plaintiff's counsel could ask him to offer opinions or testify at trial – in some
13 form or fashion – about the "Boxed Documents" (which as of the time of his deposition, he was
14 unable to connect to the instant lawsuit or to his anticipated testimony). Plaintiff argues that
15 Prater was justified in his inability to answer defendants' deposition questions because they did
16 not ask him how the "Boxed Documents" supported his opinions, but only asked how they
17 related to plaintiff's claim. Further, it appears that plaintiff is attempting to draw a distinction
18 between those documents which Prater disclosed to fulfill his Fed.R.Civ.P. 26(a) obligations
19 and those which he identified in his July 18, 2005 declaration as documents which supported his
20 opinions and which he may testify about at trial.

21 This court is unpersuaded that such a distinction exists. Indeed, Fed.R.Civ.P. 26(a)
22 requires an expert to provide, among other things, a "complete statement of all opinions to be
23 expressed and the basis and reasons therefor . . .." FED.R.CIV.P. 26(a)(2). The purpose of this
24 rule is to provide the opposing party with notice, in advance of trial, of all of the support for the
25 opinions that the expert will express. Since Prater has disclaimed any knowledge as to how the
26 "Boxed Documents" (including the "monthly operating reports" and the "Toronto trends"
27 report) relate to his opinions or to the instant action, plaintiff will be precluded from offering
28 any testimony from Prater as to those documents at trial. Indeed, at the hearing, plaintiff's

8

counsel agreed that if Prater said that he did not know how documents were relevant, then it would be improper for him to testify about them. However, plaintiff will not be precluded from offering testimony or opinions from Prater as to the documents in the four binders Prater attached to his original report (which defendants apparently did not ask Prater about), notwithstanding that they may be duplicated in the "Boxed Documents."

## IV.  ORDER

Based on the foregoing, defendants' motion for sanctions is GRANTED IN PART AND DENIED IN PART:

1. No later than **January 31, 2006**, Prater shall (1) conduct a reasonable review of his available records; and (2) serve a supplemental declaration providing a breakdown of his income as directed in the July 8, 2005 Order. Prater may provide reasoned estimates if his available records are incomplete; however, in that case, he shall fully explain how his estimates were calculated.

2. Defendants are invited to file detailed declaration(s) (a) itemizing with particularity the otherwise unnecessary expenses (including attorney fees) incurred in connection with the instant motion which were directly caused by Prater's mischaracterization of the source of some of his income in his court-ordered financial disclosures; and (b) setting forth an appropriate justification for any attorney-fee hourly rate claimed. Defendants' declaration(s) shall be e-filed **no later than January 27, 2006**. Plaintiff's/Prater's response (if any) shall be e-filed **no later than February 3, 2006**. Any reply shall be e-filed **no later than February 7, 2006**. Unless the court orders otherwise, the declaration(s) and responsive papers will be taken under submission without further oral argument.

3. No later than **January 31, 2006**, Prater shall serve defendants with a supplemental declaration providing the percentage of his time spent and gross income attributable to legal services provided as an attorney or advocate for alleged insureds, insurance companies and the FRW firm in accordance with the July 8, 2005 Order. Prater shall use actual records to the extent they exist, and identify the same. To the extent he must rely on estimates, he shall so indicate and explain how they were derived.

9

4.   Plaintiff shall be precluded from attempting to offer testimony from Prater as to the "Boxed Documents" (including the "monthly operating reports" and "Toronto monthly trends"). However, plaintiff will not be precluded from offering testimony or opinions from Prater as to the documents in the four binders Prater attached to his original report, notwithstanding that they may be duplicated in the "Boxed Documents."

IT IS SO ORDERED.

Dated: January 20, 2006

/s/ Howard R. Lloyd
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:04-cv-1312 Notice will be electronically mailed to:**

Robert Herbert Bohn Snr. bbohn@bohnlaw.com, jodie@bohnlaw.com; info@bohnlaw.com

John T. Burnite jtb@kelher.com

John C. Ferry jferry@kelher.com

Kenneth R. Friedman kfriedman@frwlaw.us

Richard Henry Friedman rfriedman@frwlaw.us, jcrook@frwlaw.us

Michael G. Glanzberg mgg@kelher.com

Thomas M. Herlihy herlihy@kelher.com

Barbara L. Lyons blyons@cpsmlaw.com

Jeffrey K. Rubin jrubin@frwlaw.us, jcrook@frwlaw.us

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.